### MEANING OF CLEAN HANDS WHEN SEEKING EQUITY.

KINNER ET AL v. LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.

69 Ohio State—Decided, January 5, 1904.

*Maxim: He Who Comes into Equity Must Come with Clean Hands—Meaning of—Sale of Railway Tickets with Return Coupons—Tickets Non-transferable—Purchasers of Such Tickets for Purpose of Reselling Them—May Be Enjoined by the Railway, When.*

1. The maxim, "He who comes into equity must come with clean hands," requires only that the plaintiff must not be guilty of reprehensible conduct with respect to the subject matter of his suit.

2. A railroad company having sold tickets with return coupons to a large number of persons who desired to attend a convention, the tickets, by their terms, being non-transferable and the purchasers being required on returning to show their identity as the original purchasers, the contract resting upon a substantial reduction in the price of carriage, is entitled to an injunction against persons acquiring the return portions of such tickets from the original purchasers and selling them to others to be used by them in violation of the terms of such contract; and the maxim referred to will not justify a denial of that relief because the plaintiff had agreed with other carriers with respect to the reduction of rates and the conditions of tickets for such occasion.

Error to the Circuit Court of Cuyahoga County.

The railway company filed its petition in the court of common pleas September 10, 1901, against Kinner and numerous others, for an injunction, alleging facts of which the following is a condensed statement: The company is a common carrier of passengers, operating a line of railroad between Chicago, Illinois, and Buffalo, New York, passing through the city of Cleveland, Ohio, and making numerous connections with other roads, reaching all parts of the United States. The Grand Army of the Republic is a patriotic organization which, for a number of years, had been accustomed to hold national encampments, that for the year 1901 being fixed at Cleveland, Ohio, and in progress at the time of filing the petition. Some months prior to the meeting of the encampment officials of the Grand Army and a committee of citizens of Cleveland, desirous of securing a large attendance at said encampment, entered into an arrangement with said company, and it agreed with said committee and with the companies operating the connecting lines to make special low rates from different points on its line and connecting lines for tickets to and from Cleveland, such tickets not to be transferable, and to be limited to the time of the meeting of said encampment, the original purchasers to identify themselves by subscribing their names whenever required for the purpose of identification, and tickets containing such conditions were sold in great numbers by said companies to persons visiting said encampment, the purchasers expressly agreeing, in consideration of such reduced fare, to comply with all of said conditions, and such agreement being indicated by the terms of the ticket. The defendants (scalpers) were engaged in obtaining from persons who had traveled to Cleveland on such tickets the return portions thereof and selling them to other persons at a price far below the fare which said company was accustomed to charge and legally entitled to receive, so that the purchasers of such return portions of said tickets might by falsely personating the original purchasers practice fraud and deception upon the company, to its great detriment and from which it would be unable to protect itself. The defendants were financially insolvent and were engaged in said traffic in tickets with full knowledge of the terms of said tickets and of the fraud and deception to be so practiced upon the company.

The answer contains certain denials of allegations of the company, and alleged that the business of carrying passengers for hire had for a long time been conducted on a competitive basis, and that great reduction of fare upon such occasions as that referred to in the petition had been made, the reductions inuring to the benefit of all persons traveling over the competing lines, but that said companies had entered into a combination known as the Central Passenger Association, the combination being formed by about twenty railroad companies, including the plaintiff, and for the sole purpose of suppressing competition, in contravention of the laws of the United States and of the state of Ohio; that the forms of tickets containing the conditions set forth in the petition were fixed and agreed upon by said combination for the accomplishment of such illegal purpose, and that by reason thereof the company was not entitled to the injunction for which it prayed.

These allegations of the answer were denied in the reply. On the trial evidence was offered by the defendants tending to sustain their allegations respecting the organization and action of the Central Passenger Association and the plaintiff's membership thereof. This evidence was excluded. The injunction having been granted as prayed for, with judgment for costs, a petition in error was filed in the circuit court, the exclusion of such evidence being the material assignment of error.

The circuit court affirmed the judgment of the common pleas, and the reversal of both judgments is the object of the proceeding in error here.

*Foran, McTighe & Baker* and *James R. Garfield,* for plaintiffs in error.

*Brewer, Cook & McGowan,* for defendant in error.

SHAUCK, J.; BURKET, C. J., SPEAR, DAVIS, PRICE and CREW, JJ., concur.

Whether the courts below should have denied relief to the railway company in obedience to the maxim that, "He who comes into equity must come with clean hands," is the question presented by the record and discussed by counsel. The record does not show, nor did the rejected evidence tend to show, that

the companies which formed the passenger association had pooled their earnings; and in the argument it is assumed that although each company issued its own tickets and retained the proceeds of their sale, an agreement among them to make a stipulated reduction in passenger fares below the usual and legal rates is illegal and contrary to public policy. Upon that assumption did the illegal contract bear such relation to the wrong whose prevention the company sought as to bar its resort to a court of equity, in view of the maxim invoked?

The maxim is more comprehensive in its results than is the kindred maxim that, "He who seeks equity must do equity." The latter, in the cases to which it applies, defines conditions which should be annexed to a decree granting equitable relief, while that which is here invoked, in the cases to which it applies, denies to the plaintiff all relief; but so similar are they and the reasons upon which they stand in all the cases to which they apply that, in some of the earlier cases and commentaries on equity jurisprudence, the entire subject is treated as comprehended within the maxim lastly stated. It is to be observed that the conditions which are annexed to the granting of equitable relief are always founded upon considerations arising out of the subject of the suit and that a plaintiff, as a condition to equitable relief, is not required to do equity with respect to matters not involved in the subject of the suit. From the assumption that the companies composing the passenger association had entered into an unlawful combination in restraint of competition, it results that their conduct may be the subject of inquiry in the nature of a *quo warranto*, and that courts of equity will also refuse to aid in the enforcement of the contract under which such combination is formed. And this suggests the extent of the operation of the maxim which is invoked by the plaintiffs in error. It denies all relief to a suitor, however well founded his claim to equitable relief may otherwise be if, in granting the relief which he seeks, the court would be required, by implication even, to affirm the validity of an unlawful agreement or give its approval to inequitable conduct on his part. But a court of equity is not an avenger of wrongs committed at large by those who resort to it for relief, however careful it may be to withhold its approval from those which are

involved in the subject matter of the suit and which prejudicially affect the rights of one against whom relief is sought. The numerous cases cited in the briefs show that in the application of the maxim urged by counsel for the plaintiffs in error, the courts have consistently granted or refused relief by determining whether the reprehensible conduct of plaintiff is related to the subject of the suit. In the present case the railway company did not count upon the illegal contract, nor did it, in any manner, ask the court to approve the validity of that contract. The tickets against whose fraudulent use the injunction was granted were issued by the company in the usual course of the business for which it was organized; the stipulations against their transfer rested upon the consideration of a reduction of the rates of carriage; they contained no stipulation contrary to any statute either of the United States or of the state of Ohio, or in contravention of public policy, nor was there anything in the conduct of the company by which any right of the original defendants was prejudiced. The judgments below are, therefore, in accordance with the uniform test as to the application of the maxim invoked.

*Judgment affirmed.*